UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| LAMONTRAI THOMAS, | ) |  |
|---|---|---|
| Petitioner, | ) | |
| v. | ) | Case No.: 1:01-CR-71 |
|  | ) | (1:10-CV-402) |
| UNITED STATES OF AMERICA, | ) | |
| Respondent. | ) | |

**OPINION AND ORDER**

This matter is before the Court for resolution of the "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" filed by the petitioner, Lamontrai Thomas, on November 17, 2010 (docket at 50). The Court, in an order entered on January 27, 2011, denied the motion (docket at 54). Thomas then filed a motion for reconsideration on February 4, 2011 (docket at 56). The Court granted that motion for the limited purpose of permitting Thomas to file an additional brief stating his argument in greater detail (docket at 58). Thomas filed that supplemental brief on April 11, 2011 (docket at 62). The government filed a supplemental response in opposition to Thomas's motion on May 5, 2011 (docket at 66). Thomas then sent a letter to the Court requesting an evidentiary hearing (docket at 67). That letter was docketed and the Court deems it to be a further supplement by defendant. For the following reasons, the motion is DENIED and DISMISSED WITH PREJUDICE. Furthermore, as set forth below, the Court declines to issue a certificate of appealability. If Thomas wishes to appeal this Opinion and Order, he must seek a certificate of appealability from the Seventh Circuit Court of Appeals pursuant to Federal Rule of Appellate Procedure 22.

## DISCUSSION

Lamontrai Thomas was charged in an indictment with one count of armed bank robbery and one count of using a handgun in relation to a crime of violence (Indictment, docket at 24). On November 29, 2001, Thomas entered a plea of guilty to both charges (docket at 36). On February 25, 2002, this Court sentenced Thomas to a term of imprisonment of 188 months on the bank robbery charge and a term of 96 months on the gun charge, with the terms to run concurrently. (docket at 43). Thomas did not file his § 2255 motion until November 17, 2010 (docket at 50).

In his § 2255 motion, Thomas alleges that he requested his court-appointed counsel to file a notice of appeal on his behalf after his sentencing, but that his lawyer failed to do so. According to Thomas, he did not discover this oversight (if that's what it was) until August of 2010 and so he maintains that his § 2255 petition is timely since it was filed less than one year after he discovered that no appeal had ever been filed in his case. Petitioner's Traverse, docket at 62, p. 2. The government responds by arguing that Thomas's petition is untimely since he failed to exercise due diligence to ensure that his petition was timely filed and that this failure should not be excused on the basis of equitable tolling. Government's Supplemental Response, docket at 66, pp. 1-2. The Court agrees with the government's position.

As the court explained to Thomas in its October 25 Order, Rule 4(b) of the Federal Rules of Appellate Procedure states, in pertinent part: ". . . a defendant's notice of appeal must be filed in the district court within 14 days[1] after . . . the entry of either the judgment or the order being

---

[1] The time period for filing a notice of appeal in a criminal case was changed to 14 days from the date of the judgment when Fed.R.App.P. 4(b) was amended in 2009. At the time Thomas was sentenced, a notice of appeal in a criminal case had to be filed within ten (10) days

2

appealed[.]" Fed.R.App.P. 4(b)(1)(A). The rule goes on to state that "[u]pon a finding of excusable neglect or good cause, the district court may–before or after the time has expired, with or without motion and notice–extend the time to file a notice of appeal for a period *not to exceed 30 days* from the expiration of the time otherwise prescribed by this Rule 4(b)." Fed.R.App.P. 4(b)(4) (italics added). Obviously, Thomas's current request for permission to file an appeal comes many years too late. In its response brief, the government argues that Thomas's present "petition is untimely and time barred." Government's Response, p. 2. The government correctly notes that Thomas had until March 7, 2002 (ten days after the date on which he was sentenced) to file a notice of appeal but did not do so. But the more immediate issue here is not the timeliness of Thomas's attempt to appeal–after all, he says it was his attorney who dropped the ball, not him--but rather the timeliness of his current motion, which the government again correctly argues is time barred.

Thomas attempts to excuse the years-long delay by alleging that he "has just recently been made aware that Attorney Mark Thoma . . . violated his Sixth Amendment Right to effective assistance of counsel in failing to file a notice of appeal contesting his conviction and sentence after he instructed Attorney Thoma to file such an appeal within the ten-day filing period." Motion to Vacate, p. 10. Thomas fails to offer a reasonable explanation for why it took him nine years to discover that an appeal was never filed in this case. Nonetheless, he "requests for this court to hold an evidentiary hearing so he can be present to provide testimony and

---

of the date of the judgment.

3

documents to prove up his case and/or permit him to take a direct appeal as stated herein." *Id.*[2]

Thomas's current motion was filed many years after the one-year limitation period for a motion under § 2255 expired. A defendant must file a § 2255 motion within one year from the date on which the challenged judgment became final. *Id.* § 2255(f)(1); *United States v. Rollins*, 607 F.3d 500, 504 (7th Cir. 2010). Thomas had until March 7, 2003, to file a motion under § 2255 (one year and 10 days from the date he could have filed a direct appeal). Consequently, his current motion must be denied as untimely. *U.S. v. Taylor*, 385 Fed.Appx. 584, 587 (7th Cir. 2010) (citing *Godoski v. United States*, 304 F.3d 761, 764 (7th Cir. 2002) and *Phillips v. Seiter*, 173 F.3d 609, 610-11 (7th Cir. 1999)).

Thomas urges the Court to excuse his late filing since, he claims, he was unable to discover that no appeal was filed on his behalf until almost nine years after he was sentenced. In other words, Thomas invokes the doctrine of equitable tolling in an attempt to argue that his present petition was timely.

It is true that the timeliness provision in the federal habeas corpus statute is subject to equitable tolling. *Holland v. Florida,* 560 U.S. \_\_\_, 130 S.Ct. 2549 (2010). "[A] 'petitioner' is 'entitled equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.*, 130 S.Ct. at 2562 (quoting *Pace v. DiGuglielmo,* 544 U.S. 408, 418 (2005)). "The diligence

---

[2] Several family members and friends of Thomas's have sent letters to the Court recently asking that Thomas's request for an evidentiary hearing be granted. Thomas seeks such a hearing because he wants to present evidence establishing his position, i.e., that he only discovered that no appeal had been filed in his case in August 2010. The Court concludes, however, that no such hearing is necessary. Even assuming, for purposes of this Opinion and Order, that Thomas is correct on this point, it does not save him. He failed to exercise due diligence to discover this issue and so his petition must be dismissed as untimely.

4

required for equitable tolling purposes is "reasonable diligence," not "maximum feasible diligence." *Id.* at 2564 (citations and internal quotation marks omitted). As to the second prong, "[e]quitable tolling is typically granted when litigants are unable to file timely petitions as a result of external circumstances beyond their direct control." *Harris v. Carter,* 515 F.3d 1051, 1055 (9th Cir. 2008). On the other hand, "[e]quitable tolling is typically denied in cases where a litigant's own mistake clearly contributed to his predicament." *Id.* In this case, the arguments Thomas presents in an attempt to establish that he is entitled to the benefit of equitable tolling are unavailing.

Thomas was specifically informed of the following at his sentencing hearing on February 25, 2002:

> The Court reminds the defendant that he can appeal his conviction if he believes that his guilty plea was somehow unlawful or involuntary, or if there was some other fundamental defect in the procedure that was not waived by his guilty plea.
>
> The defendant also has a statutory right to appeal the sentence under certain circumstances, particularly if the thinks his sentence is contrary to law. The defendant is also reminded that, with few exceptions, a notice of appeal must be filed within ten days of the judgment. If the defendant is unable to afford the costs of an appeal, he may apply for leave to appeal in forma pauperis. If the defendant so requests, the Clerk of the Court will prepare and file a notice of appeal on his behalf.

Government's Supplemental Response, p. 2 (quoting Sentencing Transcript, p. 11). Thomas claims to have instructed his lawyer to file the notice of appeal immediately after his sentencing. Petitioner's Traverse, p. 2. The attorney, Mr. Mark Thoma, states in an affidavit provided by the government that "[a]t no time on or subsequent to February 25, 2002, did your Affiant ever receive any instruction from Lamontrai Thomas–either verbally or in writing–to file a Notice of Appeal on his behalf . . . ." Government's Supplemental Response, docket at 66-1, Affidavit of

5

Mark A. Thoma. So Thomas claims he instructed his attorney to file an appeal and his attorney states otherwise. But this discrepancy is moot. As stated above, even if Thomas's recollection is correct, it does not excuse the fact that he waited many years to file his § 2255 petition when, through the exercise of reasonable diligence, he could have discovered this alleged issue in time to file a timely petition.

As the government correctly points out, Thomas has communicated with the Court over the past several years but never mentioned anything about a notice of appeal. The government notes that Thomas initiated the following communications with this Court after he was sentenced:

> The record reflects that approximately three months after he was sentenced, Thomas, *pro se*, made his first post-sentence contact with the Court. In his letter to the Court filed on May 17, 2002, Thomas requested permission to be married at the Allen County Jail. . . . Thomas made no inquiry about any appeal or voiced any concern other than permission to get married at the jail.
>
> Thereafter, on November 15, 2006, approximately 4 ½ years after his initial contact with the Court requesting to get married, Thomas made his second post-sentence contact with the Court. In this second letter contact, which the Court construed as a motion, Thomas requested transcripts of his sentencing. In his Affidavit filed on April 11, 2011, Thomas explained that the purpose of his request for the sentencing transcripts was to prove to his associates in prison that he was not a "rat" or "snitch" and that he had no agreement to cooperate with the government. . . . Thomas made no inquiry about any appeal or voiced any concern other than his request for his sentencing transcript.
>
> On September 8, 2010, nearly four years after his second post-sentence contact with the Court, Thomas filed [a] motion for nunc pro tunc order. Thomas, for the first time, raised the issue of his counsel's alleged failure to file a Notice of Appeal.

Government's Supplemental Response, p. 3 (quoting Affidavit of Lamontrai Thomas, docket at 63, ¶ 5). Indeed, Thomas presents no evidence that he used reasonable diligence to ascertain the

6

status of his appeal until August of 2010. Notwithstanding the fact that Thomas clearly had the ability to contact this Court (or the Court of Appeals) to check the status of the appeal he thought was filed in his case, he did nothing until late summer of 2010, almost nine years after he was sentenced. In fact, Thomas even concedes that he did not discover this "error" in his case until he met a fellow inmate in 2010 who noticed that Thomas's docket sheet did not contain any notation regarding any appeal. Thomas states as follows:

> After being moved from Terre Haute prison to FCI Greenville in 2008, I ran across a guy in 2010 . . . whom I befriended. Upon deep conversation concerning my federal conviction and sentence, I reluctantly allowed said individual to examine my federal docket sheet. Upon his perusal of my federal docketing sheet he immediately noticed that no notice of appeal was filed on my behalf by my counsel as instructed by Affiant.

Thomas Affidavit, ¶ 6. The fact that Thomas made no inquiries to this Court about an appeal, even after having communicated with the Court for other reasons, and the fact that he did not discover that no appeal had been filed on his behalf until he "ran across a guy in 2010" hardly constitutes due diligence. By his own admission, Thomas did nothing to try to find out the status of what he believed was his pending appeal until a fellow inmate brought the matter to his attention years after Thomas was sentenced. He does not so much as allege that some extraordinary circumstances prevented him from investigating or discovering this situation sooner.[3] Instead, Thomas argues that he only discovered this problem after discussing his case

---

[3] At one point, Thomas claims that he never received his sentencing transcripts until February 26, 2010, even though he requested them (and the Court ordered them sent to him) in November of 2006. Petitioner's Supplement, docket at 67, p. 1. The Court's docket sheet does not reflect when the transcript was sent to Thomas or why he would not have received it for many years after the Court ordered it sent to him. According to the docket sheet, Thomas never contacted this Court to inquire about the status of his sentencing transcript and it is difficult to fathom that he would ask for the transcript and then sit silently for several years until he received it. But this doesn't matter either. The sentencing transcript reveals that Thomas was fully

7

with a fellow inmate many years after he was sentenced. He also admits that he never contacted the Seventh Circuit to inquire about the status of his appeal (or lack thereof) until August 23, 2010. Thomas specifically states that after the "guy" he met in prison reviewed Thomas's docket sheet, Thomas finally "wrote the Seventh Circuit Court of Appeals and requested to be informed of the status of my appeal on August 23, 2010." *Id.*, ¶ 7. This is not good enough. In order to be afforded the benefit of equitable tolling as it applies to motions under § 2255, an inmate must take reasonable steps to discover that he might have a claim that he wants to present by way of a habeas petition. "Equitable tolling 'is an extraordinary remedy reserved for truly exceptional situations.'" *U.S. v. Trzeciak*, 2010 WL 4362808 (N.D. Ind. October 26, 2010) (quoting *U.S. v. Nolan*, 358 F.3d 480, 486 (7th Cir. 2004)). In *Trzeciak*, the defendant filed a habeas petition more than three years beyond his one-year limitations period. Trzeciak argued that equitable tolling should excuse his tardiness since his attorneys would not return his phone calls or respond to his letters. He also claimed that he was unable to telephone the trial court clerk's office, his attorney, or even his family to get information about the status of his appeal. Several years after his conviction and sentence had been affirmed, Trzeciak finally inquired about the status of his federal appeal and filed his habeas petition when he discovered that fact. Chief Judge Philip P. Simon of this Court issued an Opinion and Order dismissing Trzeciak's petition and refusing to

---

informed of his right to appeal and the deadline by which to file his notice of appeal. It does not, and would not, reveal whether an appeal was ever filed since such a filing would have come within ten days (or less) *after* that sentencing hearing. Thus, even assuming Thomas is truthful when he says he did not receive the transcript for several years after he requested it, this fact does not help him establish that he is entitled to the benefit of the doctrine of equitable tolling. If, sometime over the past many years, Thomas would have made a simple request for a copy of his docket sheet, or a phone call or letter to the Clerk of this Court or to the Seventh Circuit Court of Appeals, he would have discovered that no appeal had ever been filed in this case.

issue a certificate of appealability. Judge Simon determined that the feeble and tardy efforts Trzeciak made to find out the status of his appeal did not constitute due diligence so as to invoke equitable tolling. Judge Simon determined that Trzeciak "did not diligently pursue his rights . . ." *Trzeciak*, 2010 WL 4362808 at *2. Judge Simon went on to explain that "[e]ven if his attorneys ignored his requests for information and failed to inform him about his appeal, it was incumbent on Trzeciak to independently take steps to determine when his one year clock began . . . ." *Id.*, * 3. The same reasoning applies in the present case. Thomas also makes mention of the fact that he "is not trained in the field of law" and that he "does not and has not during the tenure of his federal sentence exercised his right to utilize the prison law library." Thomas Affidavit, ¶¶ 9 and 10. But the fact that Thomas has not used prison law library resources or that his incarceration makes it more difficult for him to research the law or communicate with the outside world does not excuse his extreme tardiness in filing his § 2255 motion. The Seventh Circuit has held that the fact of a prisoner's incarceration is not an extraordinary circumstance justifying equitable tolling. *Johnson v. McCaughtry*, 265 F.3d 559, 566 (7th Cir. 2001).

Thomas failed to exercise reasonable diligence in pursuing his rights. He failed to inquire of this Court about the status of the notice of appeal he says he instructed his attorney to file, even though he communicated with the Court on different occasions for different issues. He waited for years before directly contacting the Seventh Circuit to check the status of his appeal. In fact, it wasn't until he "ran across a guy" in prison in 2010 that Thomas even attempted to find out what happened to the appeal he thought was filed on his behalf. These actions, or more specifically, the lack of additional action by Thomas, make it abundantly clear that he did not exercise reasonable diligence in pursuing his right to file a timely § 2255 petition. Furthermore,

9

Thomas presents no evidence whatsoever that he faced any extraordinary circumstances that would justify applying equitable tolling in this case. Accordingly, his petition is denied.

Because the Court is denying Thomas's § 2255 motion, the Court must determine whether to issue a certificate of appealability (COA) pursuant to Rule 11 of the Rules Governing § 2255 Proceedings. The Court concludes that reasonable jurists would agree that equitable tolling does not excuse Thomas's extreme tardiness in filing his petition. Therefore, the Court refuses to issue a COA. If Thomas wishes to appeal this Opinion and Order, he must seek a COA from the Seventh Circuit Court of Appeals pursuant to Federal Rule of Appellate Procedure 22.

## CONCLUSION

For the reasons set forth above, the "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" filed by the petitioner, Lamontrai Thomas, (docket at 50) is DENIED and DISMISSED with prejudice. Additionally, the Court declines to issue a certificate of appealability. If Thomas wishes to appeal this Opinion and Order, he must seek a certificate of appealability from the Seventh Circuit Court of Appeals pursuant to Fed.R.App.P. 22.

Date: June 24, 2011.

S/ William C. Lee
William C. Lee, Judge
United States District Court
Northern District of Indiana